WILLIAM BERT CONRAD v. STATE OF INDIANA.

[No. 1273S255. Filed October 21, 1974.]

*Gerald E. Surface, Jr.,* Public Defender, *James M. Back-meyer,* Public Defender, of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *G. Philip Duckwall,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by William Bert Conrad, defendant-appellant, from a conviction in the Henry Circuit Court for kidnapping and manslaughter. He was indicted by the Wayne County Grand Jury. He was tried by jury which returned its verdict of guilty on May 9, 1973. Appellant timely filed his motion to correct errors, the overruling of which results in this appeal.

Appellant raises several issues, including the admission of blood type evidence without proper foundation, the admission of testimony relating to certain items removed from appellant's automobile without proper foundation, and lack of jurisdiction. Appellant also objects to the giving of an instruction by the court, and the concomitant refusal to give certain instructions tendered by appellant. Appellant objects to the use at trial of statements allegedly given in violation of his constitutional rights. Finally appellant asserts that this conviction was contrary to law and based upon insufficient evidence.

In reviewing the sufficiency of the evidence, this Court will not weigh the evidence. Rather, we are constrained to consider the evidence most favorable to the state and the reasonable inferences therefrom. If there is substantial evidence of probative value from which the trier of fact could reasonably infer that appellant was guilty beyond a reasonable doubt, the verdict will be affirmed. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686.

A companion of appellant, one Phyllis Anderson, testified that she accompanied him to the home of Gilbert Merle Hudelson about 11:00 o'clock, p.m., on the evening of June 15, 1972. Appellant found Hudelson working in his garage and began a conversation with him. The conversation degenerated into an argument. Appellant struck Hudelson with his fist. Appellant then placed Hudelson in the trunk of appellant's automobile. Appellant and Miss Anderson then drove around, finally stopping on State Line Road, when appellant's vehicle overheated. Appellant instructed Miss Anderson to get some water from a nearby farmhouse. When leaving the car, Miss Anderson heard a voice from the area of the trunk saying, "Let me out of here." When she returned with the water, she asked appellant why it was so quiet, and he replied that "The old man won't talk 'cause I just beat his brains out." Upon restarting his vehicle, appellant and Miss Anderson returned to Richmond. Eventually appellant stopped the car on Woodside Drive and pulled Hudelson from the trunk and dragged him to the edge of the road. They then returned to Miss Anderson's apartment. The victim's body was discovered on Friday, June 16, 1972.

Miss Anderson's testimony was corroborated by the resident of the farmhouse, who gave her water for appellant's automobile; by medical testimony placing the approximate time of death; by testimony as to the blood group of stains on items removed from appellant's trunk; and by the testimony of Anderson's niece, who helped clean out the trunk of appellant's vehicle on Saturday, June 17, 1972. There is an abundance

of evidence from which the jury could have determined appellant's guilt of the offenses charged. Therefore, appellant's contention of insufficiency of the evidence is without merit.

Appellant objects to the admission of a blood sample taken from the deceased. Appellant also objects to the admission of a blood sample given by appellant. The basis of these objections is the state's alleged failure to prove an adequate chain of custody. Specifically, appellant asserts that the state failed to negate any possibility of tampering while the samples were in official custody. As we have often stated, "The mere possibility that evidence might have been tampered with will not make the evidence totally objectionable." *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E.2d 407; *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541; *Rose* v. *State* (1972), 258 Ind. 377, 281 N.E.2d 486.

Appellant protests that the state failed to prove that the "instruments used to obtain the blood were sterile, that the blood was properly preserved, and that when the blood samples were tested they were still pure." As authority for this proposition, appellant relies upon *State* v. *Shelton* (Iowa 1970), 176 N. W. 2d 159. In that case the Iowa Supreme Court reversed a conviction for driving under the influence where the defendant's blood sample had not been obtained in compliance with statutory procedure. We agree with appellant that the statutory procedure in *Shelton* regarding the foundation to be laid prior to the admission of blood samples may be desirable. However, the adoption of such a scheme lies within the province of the legislature and not this Court. Absent such procedure, we note that there is sufficient evidence demonstrating that the purity of the sample was maintained. The samples were placed in clean glass vials containing an anti-coagulant substance. The vials were then sealed, initialed, and maintained in police custody. Appellant's objection to the admission of evidence based upon these samples is without merit.

Appellant also raises the chain of custody argument with

regard to the admission of testimony relating to certain items taken from the trunk of appellant's auto. Again, we find sufficient evidence to account for the whereabouts of state's exhibits 22, 23, and 27 through 34. Moreover, appellant seeks to charge the state with failure to prove chain of custody from the date of death, June 15, 1972, until October 23, 1972, the date when items were removed from appellant's vehicle. As the state properly notes, it cannot be responsible for the custody of goods until it has possession. We find no error in the admission of testimony related to the exhibits taken from appellant's vehicle.

Appellant next contends that the trial court lacked jurisdiction to try him for murder committed in Ohio. Appellant bases this contention upon certain testimony from which the jury could have inferred that the final and fatal blows to the victim were inflicted at a place on State Line Road lying within the State of Ohio. The trial court was aware of defendant's contention that the murder was a separate act occurring in Ohio and instructed the jury:

> ". . . if you find from the evidence that the killing of the said Gilbert Merle Hudelson occurred in the State of Ohio, but that the killing was not a part of a common plan, design, and intent to kidnap and kill said Gilbert Merle Hudelson which originated in Wayne County, Indiana, and was not part of one continuous course of action by the defendant which originated and commenced in Wayne County, Indiana, *but that the intent to kill was arrived at and the fatal blow struck in the State of Ohio and that such intent and action originated there and after the commission of the offense of kidnapping in the State of Indiana and that the same was not part of one continuous plan, design and intent, and not the result of one continuous course of action by the defendant, but was a separate and independent set of acts occurring outside of the State of Indiana,* then the State of Indiana would have no jurisdiction to prosecute the defendant for the offense of murder as charged in the second count of the indictment and you must find the defendant not guilty as to the second count of the indictment." (Emphasis added)

Admittedly, the jury might have found appellant's actions

on State Line Road to have been separable and distinct. Nevertheless, this does not permit this Court to reweigh the evidence and set aside the verdict of the jury.

There was substantial evidence presented from which the jury could find that the assault and abduction of the victim were integrally related to the victim's murder. Thus viewed, the assault and abduction provide an adequate jurisdictional base for appellant's conviction of murder in Wayne County, Indiana. *Archer* v. *State* (1886), 106 Ind. 426, 7 N.E. 225.

Appellant objects to the court's instruction, quoted from in the preceding discussion, as contrary to law in that no evidence of plan or design was presented. For the reasons stated above, this contention is without merit.

Appellant further assigns as error the refusal of the trial court to give 27 instructions tendered by the defendant. However, appellant's failure to argue this issue in his brief is a waiver of the alleged error. *Indiana Rules of Appellate Procedure,* Appellate Rule 8.3 (A) (7), *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805.

Appellant challenges the admission into evidence of statements given by him during interrogation by police officers on July 19, 1972. Appellant argues that the failure of the investigating officers to give him his *Miranda* rights prior to the questioning precluded the use of his statements at trial. These statements were given during a session which began at 2:00 o'clock p. m. The record indicates that the first time appellant was questioned on July 19, 1972, was around 10:00 o'clock a.m. Prior to this questioning, appellant's rights were read to him and he signed a written waiver thereof. After this questioning, appellant consented to a search of his automobile. Before the search, appellant was again advised of his rights. At trial, Officer Blunk testified as to appellant's reaction upon being read his rights the second time:

"He at this point really didn't want to listen to them. He said he understood them and he made some objection at

that point as to Detective Irvine even reading them to him again."

Under these circumstances, appellant's constitutional rights were not prejudiced by the state's failure to read him his rights a third time. See *Rogers* v. *State* (1974), 262 Ind. 315, 315 N.E.2d 707. There was no error in the admission of appellant's statements.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported at 317 N.E.2d 789.