Abdullah ALKHALIDI, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–0005–CR–288.

Supreme Court of Indiana.

Aug. 23, 2001.

Thomas P. Keller, South Bend, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Abdullah Alkhalidi was convicted of murder, robbery, and theft. In this direct appeal, Alkhalidi contends that: (1) Indiana lacked jurisdiction over this case; (2) St. Joseph County was not the proper venue; (3) there was insufficient evidence to support the robbery conviction; and (4) the trial court abused its discretion by preventing Alkhalidi from presenting alibi witnesses. We affirm the trial court.

**Factual and Procedural Background**

Alkhalidi was experiencing financial difficulties in the spring of 1999. On May 2 of that year, Claude Purdiman, an Elkhart County resident, went to the Blue Chip Casino in Michigan City, in LaPorte County, Indiana. He started the evening with approximately $3000 in cash and won $500 more over the course of the evening. Surveillance tapes from the casino showed Purdiman leaving with Alkhalidi, who lived in South Bend, which is in St. Joseph County. LaPorte County and Elkhart

County are contiguous to St. Joseph County. All are on Indiana's northern border with Michigan. On May 3, Purdiman was last seen in St. Joseph County, where he told friends he was returning to the casino with Alkhalidi and another friend. The next day, on May 4, Alkhalidi, whose bank account balance was $22.68 on May 3, lost over $3000 at the casino. Purdiman did not accompany him.

On May 6, Purdiman's car was found in Paw Paw, Michigan with its license plate removed. Two days later, on May 8, Purdiman's partially burned body was found in Michigan, approximately ten miles from the Indiana border. The cause of death was a gunshot wound to the head. On May 13, the police arrived to question Alkhalidi, and found him loading items into the trunk of his car. Purdiman's license plate was clearly visible in the trunk. A further search of the house revealed Purdiman's clothing, rags with Purdiman's blood on them, a casino ticket of Purdiman's, and ammunition that matched the type causing Purdiman's death. Purdiman's blood was also found on the front passenger floor mat and trunk mat of Alkhalidi's car. Alkhalidi was tried in St. Joseph County, convicted of murder, robbery, and theft, and was sentenced to sixty-five years imprisonment.

## I. Sufficiency of the Evidence

■ Alkhalidi contends there was insufficient evidence to establish either jurisdiction in Indiana or venue in St. Joseph County. He also challenges the sufficiency of the evidence to support the conviction for robbery. Our standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, *Harrison v. State,* 707 N.E.2d 767, 788 (Ind.1999), and it lies within the jury's exclusive province to weigh conflicting evidence, *Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998). We will affirm the trial court if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Tobar v. State,* 740 N.E.2d 109, 111–12 (Ind.2000).

### A. Jurisdiction

■ Alkhalidi contends that Indiana did not have jurisdiction of his case because the State did not prove jurisdiction beyond a reasonable doubt. Jurisdiction is considered an element of the offense. *Sundling v. State,* 679 N.E.2d 988, 991 (Ind.Ct.App.1997). Indiana has jurisdiction if either the conduct that is an element of the offense or the result that is an element occurs in Indiana. Ind.Code § 35–41–1–1(b)(1) (1998); *McKinney v. State,* 553 N.E.2d 860, 862 (Ind.Ct.App. 1990), *trans. denied.* Jurisdiction must be proved beyond a reasonable doubt. *Sundling,* 679 N.E.2d at 991.

■ Much of Alkhalidi's argument rests on Michigan law that would give Michigan jurisdiction. This argument is unpersuasive. Two states can each have concurrent criminal jurisdiction over a crime with the proper nexus to both. *Cf. Archer v. State,* 106 Ind. 426, 432, 7 N.E. 225, 228 (1886) ("There is, as we understand the authorities, no real conflict of opinion as to the power of the. Legislature to provide for punishment of a crime partly committed in one jurisdiction and partly in another, in either jurisdiction. . . ."); *Kiser v. Woods,* 60 Ind. 538 (1878) (prosecution for larceny allowed in Indiana where defendant obtains money and plans scheme in Ohio, but completes scheme in Indiana). Whether Michigan could also have tried Alkhalidi is irrelevant.

■ The jury was instructed that it had to find jurisdiction beyond a reasonable doubt. There was sufficient evidence for the jury to conclude that either the conduct—the robbery and/or shooting—or the result—the taking of property and/or death—occurred in Indiana. Purdiman was last seen in St. Joseph County, Indiana. He had announced his intention to go with Alkhalidi west to Michigan City, Indiana, not north to Michigan.[1] He had a large amount of cash that might or might not have been in his possession after the contemplated casino visit. On May 3 or 4 Purdiman's car was seen outside Alkhalidi's home. No blood was found near Purdiman's body, suggesting that he was not killed where his body was found. The blood in Alkhalidi's car points to the car as the place where Purdiman was murdered. Many of Purdiman's personal effects (clothing, a cell phone, drivers license, and a dinner ticket) were found at Alkhalidi's residence. This evidence was sufficient for the jury to conclude beyond a reasonable doubt that Purdiman was killed in the course of a robbery that took place at least in part in Indiana. In addition, Alkhalidi was convicted of theft for "exerting unauthorized control" over Purdiman's license plate. This crime clearly occurred in Indiana because the police found Alkhalidi with the plate outside of his home in St. Joseph County.

■ Where a defendant is charged with multiple crimes that are "integrally related," jurisdiction over all the crimes is proper if some of them occurred in Indiana. *Conrad v. State*, 262 Ind. 446, 450–51, 317 N.E.2d 789, 791–92 (1974). In

*Conrad*, this Court affirmed a conviction for kidnapping and manslaughter, pointing out that "[t]here was substantial evidence presented from which the jury could find that the assault and abduction of the victim were integrally related to the victim's murder. Thus viewed, the assault and abduction provide an adequate jurisdictional base for appellant's conviction of murder in Wayne County, Indiana." *Id.* at 451, 317 N.E.2d at 792. As a result, Indiana had jurisdiction over the prosecution. The same reasoning applies here.

**B. Venue**

■ The right to be tried in the county in which an offense was committed is a constitutional and a statutory right. *See* Ind. Const. art. I, § 13; Ind.Code § 35–32–2–1(a); *Weaver v. State*, 583 N.E.2d 136, 140–41 (Ind.1991). Venue is not an element of the offense. *Sizemore v. State*, 272 Ind. 26, 31, 395 N.E.2d 783, 787 (1979). Accordingly, although the State is required to prove venue, it may be established by a preponderance of the evidence and need not be proved beyond a reasonable doubt. *Id.*

■ Venue is usually an issue for determination by the jury. 16B William Andrew Kerr, *Indiana Practice* § 22.9f(2) (1998); *see also Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997) (venue issue submitted to the jury). This is because venue typically turns on an issue of fact, i.e., where certain acts occurred. If so, it is appropriate for the court to instruct the jury on venue. *Cutter v. State*, 725 N.E.2d 401, 408–09 (Ind.2000). The jury was in-

1. There was conflicting testimony concerning whether Purdiman was headed to Michigan or Michigan City. However, it was reasonable for the jury to conclude from this conflicting testimony that Purdiman was headed to Michigan City. The testimony showing he was headed to Michigan also showed he was head-ed to Michigan City first, and it was there that the events leading to Purdiman's robbery and murder began. It is for the trier of fact to judge credibility, and we will affirm if a reasonable fact-finder could reach a particular conclusion. *Harrison*, 707 N.E.2d at 788.

structed that it had to unanimously find that venue had been established in St. Joseph County. The same facts pointing to jurisdiction in Indiana also suggest venue in St. Joseph County.

### C. Robbery

■ Alkhalidi contends that there was insufficient evidence presented at trial to convict him of robbery. To convict Alkhalidi for robbery, the State was required to prove that Alkhalidi: (1) knowingly or intentionally (2) took money (3) from the presence of Purdiman (4) by use of force or threat of force and (5) while armed with a deadly weapon or resulting in bodily injury to any person other than Alkhalidi. Ind.Code § 35–42–5–1.[2]

It is clear from the record that Alkhalidi was experiencing acute financial difficulty immediately preceding Purdiman's murder. It is also clear that Alkhalidi's cash position had improved dramatically only one day after Purdiman's murder. Purdiman was last seen on his way to Alkhalidi's house with a large sum of money. Purdiman was found dead from a gunshot wound and Alkhalidi was in possession of several items of Purdiman's property, including his clothes and license plate. Force with a deadly weapon was plainly used. These constitute sufficient evidence of all the necessary elements of robbery.

### II. Alibi Witnesses

Alkhalidi contends that because the State did not specify the exact date and location of the crime, his ability to provide an effective alibi defense was impeded. Additionally, Alkhalidi contends that the trial court abused its discretion by limiting his alibi witnesses to those who were fully named in his witness list.[3]

Alkhalidi filed a belated notice of alibi defense on July 27, 1999, after the deadline to file a notice of alibi defense had passed. The State responded that it relied upon the charging information, which placed the death of Purdiman on or about May 3 and before May 8. On October 7, at a pretrial hearing, the trial court informed Alkhalidi that if he did not provide complete information for his alibi witnesses he would not be allowed to call them.

■ Although the State did not give the exact date or location of the crime, it was required to state the time of the offense "with such reasonable specificity as the circumstances of the case allow." *Bruce v. State*, 268 Ind. 180, 207, 375 N.E.2d 1042, 1058 (1978). Here, there were no eyewitnesses to the crime and the medical testimony was inconclusive as to the exact time of death. The State could not be more specific than "on or about May 3, 1999." This did not prevent Alkhalidi from presenting his alibi defense. *See Joyner v. State*, 678 N.E.2d 386, 394 (Ind. 1997).

■ Furthermore, the trial court did not abuse its discretion in refusing to allow Alkhalidi to call witnesses for whom he had not provided complete names and addresses. Alkhalidi did not timely file his notice of alibi, and the trial court could have properly refused to allow Alkhalidi to present any alibi witnesses at all. Alkhalidi was not unfairly prejudiced when the trial court granted his motion to filed a

---

2. Alkhalidi was charged and convicted of robbery as a Class A felony. However, the trial court entered judgment of conviction for robbery as a Class B felony.

3. Under this heading, Alkhalidi also claims that the State was allowed to add witnesses

and amend charges after the omnibus date. Although it is not clear how these allegations relate to Alkhalidi's alibi defense, these decisions are reviewed for an abuse of the trial court's discretion, which was not present here.

belated alibi notice, but placed some restrictions on which witnesses Alkhalidi would be allowed to call.

■ In any event, the trial court gave Alkhalidi notice that he needed to provide complete names and addresses in order to be allowed to call the witnesses on his list. Because one of the objectives of the statute is to allow the State sufficient notice to rebut the defendant's alibi defense, *Baxter v. State*, 522 N.E.2d 362, 369 (Ind.1988), the trial court did not abuse its discretion in refusing to allow Alkhalidi to call witnesses for which he did not provide this information. *See Herrera v. State*, 679 N.E.2d 1322, 1324–25 (Ind.1997) (not abuse of discretion to refuse to allow defendant to call alibi witnesses when information on them was not disclosed until five days before trial).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.