Matthew Erin KOCH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–1004–CR–154.

Court of Appeals of Indiana.

Aug. 24, 2011.

Matthew J. McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Matthew Erin Koch appeals his convictions and sentences for two counts of criminal confinement as class B felonies,[1] battery by means of a deadly weapon as a class C felony,[2] kidnapping as a class A felony,[3] and robbery as a class A felony.[4] Koch raises five issues, which we revise and restate as:

I.  Whether the evidence is sufficient to support his convictions for kidnapping, robbery, and battery;

II.  Whether the trial court abused its discretion by rejecting Koch's proposed instruction on jurisdiction;

III.  Whether Koch's convictions for criminal confinement and kidnapping violate Indiana's prohibition against double jeopardy or the continuing crime doctrine;

IV.  Whether the court abused its discretion in sentencing Koch; and

---

1.  Ind.Code § 35–42–3–3 (Supp.2006).

2.  Ind.Code § 35–42–2–1 (Supp.2008) (subsequently amended by Pub.L. No. 131–2009, § 73 (eff. July 1, 2009)).

3.  Ind.Code § 35–42–3–2 (2004).

4.  Ind.Code § 35–42–5–1 (2004).

V.  Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm in part, reverse in part, and remand.

The relevant facts follow. In 2005 or 2006, Lien Kim Le met Koch in a chemistry class at U.S.I. in Evansville, Indiana. At some point, Le and Koch started dating and dated "[o]n and off" for approximately three years. Transcript at 429. By July 2008, Le and Koch remained friends and talked regularly.

On July 17, 2008, Le talked to Koch while she was at work in Evansville regarding a television they had purchased and had decided to return. Around 3:00 p.m., Koch went to Le's workplace and picked up her debit card because Le had agreed that Koch was entitled to a portion of the refund from the television. Koch withdrew money from Le's account and purchased a prepaid debit card. Koch told Le that he was moving to California, which he had previously discussed with her. He returned Le's debit card to her, said goodbye, and left.

Le later called Koch to check to see if he was aware if there was an activation or transaction fee on the debit card he purchased, and Koch "[a]ll of a sudden … said someone's trying to kill [him], and then he hung up the phone." Id. at 434. Le then repeatedly attempted to call Koch back, but could not reach him. A short time later, Le was able to reach Koch, and Koch told her that someone was trying to kill him and asked Le if she would call him after she was finished working. Koch called Le again and told her that he was calling from St. Mary's Hospital in Evansville. When Le finished working around 6:30 p.m., she drove straight to the hospital and as she passed a CVS she saw Koch's vehicle in the CVS parking lot, which she thought was odd.

Le pulled into a parking space at the hospital and saw Koch "just standing in the parking lot." Id. at 440. Le exited her vehicle and asked Koch "what was going on," and Koch asked her to take him to his vehicle. Id. Le then entered her vehicle, and Koch entered the passenger side of her vehicle, "pulled a gun out, and sat it on his lap" with the barrel facing toward Le. Id. Koch then told Le to take him to his vehicle. Le asked Koch why he had the gun, but Koch "wouldn't give [her] any answers, he just said that he wanted [her] to take him to his vehicle." Id. at 441. Koch also told Le that she was "going for a trip." Id. Le did not want to drive Koch to his vehicle but she was afraid and did so because Koch had a gun. On the drive to CVS, which took "[a] few minutes," Koch said that someone had tried to kill him earlier that afternoon, and he went through Le's pockets and dismantled her cell phone. Id. at 444.

When they arrived at CVS, Koch told her to pull in next to his vehicle. Le did so, put her vehicle in park, and Koch reached over and took the keys out of the ignition. Koch then told her that he was "taking [her] with him," and "to get out of the vehicle, don't run, don't yell for help, don't get anybody's attention." Id. With the gun still on his lap, Koch said that "he could run faster than [her], and [she] knew what he could do to [her]." Id. Le was afraid and unwillingly entered the passenger side of Koch's vehicle. Koch entered the driver's side and drove south on Green River Road.

Le made it clear to Koch that she had no intention of going anywhere with him, that he should let her go and that he could leave. Le also said: "I don't want to go with you, I don't know where we're going," but Koch told her that he needed to take

her with him. *Id.* at 446. He headed south on Green River Road, entered the I–164 ramp and then headed toward St. Louis. For the next two to three hours, Le expressed her desire not to continue with Koch. She repeatedly told him: "you're kidnapping me, people are going to expect me to be at work, my aunt and uncle are going to come home, they're going to know something's wrong, people are going to know that I'm missing." *Id.* at 447–448. Le's pleas did not have any impact.

At least two hours after they left Evansville, Koch fired the gun out of the sun roof window. Koch said that he did so "because at some point and time during that day, the gun was left alone, and he was afraid someone had tampered with it, and he wanted to make sure it was still working properly." *Id.* at 448. He stopped several times and would usually stop on the side of the road to "use the restroom." *Id.* Koch "made [Le] get out of the vehicle, stand with both of [her] hands on the door of the vehicle facing him while he used the restroom." *Id.* Le complied because Koch had the gun and she was afraid. Koch stopped at several gas stations, and Le saw people but did not ask for help because she "didn't want to get hurt, [and] didn't want anyone else to get hurt." *Id.* at 449.

The two arrived in Albuquerque, New Mexico less than twenty-four hours after leaving Evansville. They stayed at a hotel for a couple of hours, and Le slept "maybe [sic] a couple of minutes," but was otherwise too scared to sleep. *Id.* at 452. At some point, Koch told Le that he decided to take her back to Evansville, and that "the reason he had taken [her] was he felt he could only make it to California safely with [her] there, but since he was still having health issues along the way, that it didn't matter if [she] was there or not...." *Id.* The two then headed east.

A few minutes after leaving the hotel, Koch asked Le if she would drive, and Le agreed. Koch pulled over to the side of the road, and they switched seats. Koch then grabbed Le by the neck and started choking her with his left hand and "smacked" her in the face with his right hand. *Id.* at 454. Le could not breathe or "do anything." *Id.* Koch then let go and told Le to start driving.

At some point, Koch told Le to pull over and to walk over to the passenger side of the vehicle, and Le complied. Koch screamed at her and punched her in the chest. He asked her "why was [she] doing this to him, who else was [she] working for, things of that nature." *Id.* at 454. Le fell to the ground, and then entered the vehicle again after Koch told her to do so. Koch started driving and hit Le in the face, neck, and chest while he was "yelling at [her] and accusing [her] of this conspiracy theory that he had." *Id.* at 456. At some point, Koch believed he was hearing voices in the speakers of the vehicle, pulled over to the side of the road, and started ripping out the speakers inside the door.

"[O]n the other side of Albuquerque," Koch again pulled over to the side of the road, told Le to exit the vehicle and walk towards a ditch, and Le complied. *Id.* at 521. He yelled at her and asked if she was working for the FBI or the police department, and she thought he was going to kill her. Koch then shot Le in her left ankle and she fell to the ground and was rolling in the dirt with pain. Koch then kicked her in the stomach and rib area, put the gun in her mouth, and screamed at her to tell him the truth. Le was crying, bleeding, and afraid. She told Koch that she did not want to die, that she was telling the truth, and that she "had no involvement in any of it." *Id.* Koch went back to the vehicle, screamed into the speakers, and said: "[A]re you happy now?

Come and get me, she's bleeding, she needs help...." *Id.* at 461.

Koch told Le to stand up, but she was unable to stand on her own so he helped her back to the vehicle, but then dropped her on the ground and said that he "had to get something [be]cause he didn't want [her] to bleed all over the vehicle." *Id.* He then wrapped Le's foot in a fleece blanket and began driving. At some point he wrapped string around Le's mouth and later placed a sock in her mouth and again wrapped the string around her mouth.

Shortly after Koch shot Le, he told her to give him her debit card, took the card from Le, and used it to purchase gas. At that point, Le decided that it was in her best interest to pretend that she had "passed out or fallen asleep so that [Koch] would stop hitting [her]." *Id.* at 466.

After reaching Oklahoma City, Koch said that because he had already shot Le, he knew that he was going to be in trouble, and that if he was going to be in trouble, he wanted everyone to know his story. He spoke to two men standing outside a business and said: "I know this looks bad, but this girl is my girlfriend, we've dated a long time, she's an undercover Police agent, and she's trying to kill me." *Id.* at 467. Koch flagged down Oklahoma City Police Lieutenant Tammie Reeder at 6:25 a.m. on July 19, 2008, and asked her for directions to the "newspaper place," which Lieutenant Reeder provided.[5] *Id.* at 292. Koch eventually entered a news station, returned to his vehicle, and told Le that "they were doing the weather and then they would talk to him after that." *Id.* at 468. Koch believed "they were taking too long of a time, so he got back into the vehicle," and drove to a second news station. *Id.* Lieutenant Reeder responded to a call involving the report of a man with a gun and a woman in a vehicle that had been shot and eventually encountered Koch. Reeder ordered Koch to the ground, and Koch stated "you need to help me, they're after me." *Id.* at 297. Koch informed Reeder that he had a gun in his left front pocket, which Reeder retrieved and later identified as a Glock 22, 40 caliber handgun. The police took Koch into custody and discovered that he also had a knife and two magazines loaded with ammunition. As medical personnel wheeled Le past the police car in which Koch was sitting, Koch said: "I'm sorry." *Id.* at 471.

In July and September 2008, the State charged Koch with: Count I, criminal confinement as a class B felony; Count II, criminal confinement as a class B felony; Count III, battery by means of a deadly weapon as a class C felony; Count IV, kidnapping as a class A felony; and Count V, robbery as a class A felony.

At some point between his arrest and the date of trial, Koch called Le and in a recorded call said:

> Are you still going to lie? Is that all you know how to do? Guess we'll find out in trial. I guarantee I'll make this trial. I made it this f------ far. That's probably a scary thought for you. (Unintelligible) 'cause I'm going to lose everything I have, everything.... If you think you've seen me mad, huh, you have no idea, but you got some thoughts, talk to me. I suggest you do, and when I'm not on drugs and I'm (unintelligible) I guarantee I'm 10 times more dangerous than I was the other night. I just can't believe how much I loved you, and you were lying to me the whole time.

*Id.* at 481–482.

On August 26, 2008, Koch's counsel filed a Motion for Psychiatric Examinations to Determine Competence to Stand Trial and

---

**5.** Lieutenant Reeder did not observe anyone else in Koch's vehicle.

Insanity at the Time of the Crime Alleged. On November 6, 2008, Koch filed a *pro se* petition to withdraw the motion and argued that it was filed without his consent.

On December 19, 2008, the court held a hearing, and Koch stated that he had no intention of pleading insanity and that he would refuse any competency evaluations. The court asked Koch's counsel to submit authority on whether or not Koch could be compelled to attend the evaluations. On February 11, 2009, a hearing was held, and Koch indicated that he was "not going to assist" and "not going to volunteer for any kind of testing." *Id.* at 15. The court scheduled a competency hearing for March 4, 2009, at which time the State presented the testimony of confinement officers, the phone call recording between Koch and Le, and a recorded interview of Koch with a television station in Oklahoma. Two of the confinement officers testified that they had concerns regarding Koch's mental health. Another officer testified that Koch stated that the officer had poisoned Koch which was not true. Koch stated that he understood all the charges against him but believed they were "erroneous" and that "[i]f I'm really crazy, uh, where's the evidence? I've been in school making decent grades. I mean I can still do long division." *Id.* at 42. Koch also stated that he could assist in his own defense. The court ordered him to be examined by two psychiatrists. Koch ultimately stated that he would not follow the court's orders, and the court took the matter under advisement.

On April 7, 2009, the court found Koch incompetent to stand trial and unable to assist counsel in his defense[6] and ordered him committed to the Indiana Division of Mental Health and Addiction. Koch stated that he was not insane or incompetent. On August 5, 2009, Logansport Hospital informed the court that Koch was competent to stand trial.

On January 8, 2010, the State filed an amended charging information which changed the date of the offenses from "on or about July 17, 2008" to "between July 17, 2008, and July 19, 2008." Appellant's Appendix at 9–10, 13, 40–42. The State later filed amended charges of Count III and Count V indicating in part that the respective offenses occurred "as part of a continuous criminal act beginning in Vanderburgh County. . . ." *Id.* at 48.

On January 19, 2010, the court held a pretrial conference and informed Koch that his counsel could proceed by arguing to the jury that he could be found not guilty by reason of mental disease or defect or guilty but mentally ill. Koch's counsel stated that he believed that Koch requested that he not proceed with either argument. Koch indicated that was correct and that he was "positive" of his decision. Transcript at 83.

On January 25, 2010, the jury trial began. After the State rested, Koch moved for a directed verdict on Counts III, IV, and V and argued that these offenses did not occur in Indiana. After a recess, the court denied the motion because Counts III and V were integrally related to the offenses which the State alleged in Counts I, II, and IV. The court also denied Koch's motion relating to Count IV.

Koch proposed instructions related to jurisdiction of Count III, battery by means of a deadly weapon as a class C felony, and

---

6. The chronological case summary indicates that a competency hearing was held on April 3, 2009. An affidavit from the Riding Bailiff for the Vanderburgh Circuit Court states that Koch requested the court proceedings of April 3, 2009, to be transcribed but that "[t]his was a minute made in chambers on said date and therefore, there are no Court proceedings to transcribe for that date." Transcript at 49.

Count V, robbery as a class A felony. The court rejected Koch's proposed instructions and instructed the jury on each offense that "the law of jurisdiction requires that either 1) some part of the criminal conduct or result occurred in Indiana; or 2) that the crimes charged against the defendant are integrally related and some of the crimes occurred in Indiana." *Id.* at 648, 650.

The jury found Koch guilty as charged. The court found that "the harm, loss and damage suffered by [Le] was significant in this case and greater than the elements necessary to prove the commission of the offense." Sentencing Transcript at 12. The court considered the "nature and circumstances of the crime," the duration of the offenses, and the "ongoing terror used to control the behavior of the victim" as aggravating circumstances, and Koch's military service as a mitigator and concluded that the aggravators outweighed the mitigators. *Id.* The court sentenced Koch to fifteen years for each count of criminal confinement as class B felonies, six years for battery as a class C felony, forty-five years for kidnapping as a class A felony, and forty-five years for robbery as a class A felony. The court ordered that the sentences be served concurrent with one another for an aggregate sentence of forty-five years.

## I.

■ The first issue is whether the evidence is sufficient to support Koch's convictions for kidnapping, robbery, and battery. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

### A. *Kidnapping*

The State charged Koch with kidnapping by hijacking.[7] The offense of kidnapping is governed by Ind.Code § 35–42–3–2, which provides:

(a) A person who knowingly or intentionally confines another person:

\* \* \* \* \* \*

(2) while hijacking a vehicle;

\* \* \* \* \* \*

commits kidnapping, a Class A felony.

(b) A person who knowingly or intentionally removes another person, by ... force, or threat of force, from one place to another:

\* \* \* \* \* \*

(2) while hijacking a vehicle;

\* \* \* \* \* \*

■ commits kidnapping, a Class A felony.

The term "confine" as used in the statute "means to substantially interfere with the liberty of a person." Ind.Code § 35–42–3–1. The term "hijacking" means "the exercising of unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants." *Wilson v.*

---

**7.** The charging information, as amended, alleged:

[B]etween July 17, 2008, and July 19, 2008, [Koch] did knowingly confine or remove another person, to-wit: Lien Kim Le, by force or threat of force from one place to another, said act occurring while hijacking a vehicle, contrary to the form of the statutes in such cases made and provided by I.C. 35–42–3–2 and against the peace and dignity of the State of Indiana.

Appellant's Appendix at 42.

*State,* 468 N.E.2d 1375, 1378 (Ind.1984), *reh'g denied.* "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind.Code § 35–41–2–2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). Thus, to convict Koch of kidnapping as a class A felony, the State needed to prove that Koch knowingly or intentionally confined Le or removed her from one place to another by force or threat of force while hijacking a vehicle.

■ Koch argues that the "knowingly" element is missing. Appellant's Brief at 15. Specifically, Koch argues that Le agreed to take him to CVS before he took out a gun and "[f]rom the perspective of Koch, it makes no sense that Le would volunteer to drive him to his vehicle and that he would thereafter 'knowingly' force her to do so." *Id.* Koch argues that "the 'consent' element that is inherent in the 'confinement' element of the kidnaping [sic] charge" is missing because Le volunteered to drive Koch and Le testified that she could not be certain if she told Koch that she changed her mind and no longer wanted to take him there. *Id.* Koch also argues that there is no evidence that he pointed the gun at Le and no evidence that he hijacked Le's vehicle.

The State argues that Le initially intended to drive Koch to his vehicle but that "the situation changed when [Koch] displayed his weapon." Appellee's Brief at 14. The State argues that "[t]aking out a gun and pointing its barrel at someone is sufficient to intimidate a person and these acts constitute threat of force." *Id.* The State also points out that Koch searched Le's pockets and threw her cell phone on the floor.

The record reveals that after Le entered the driver's side of her vehicle, Koch "pulled a gun out, and sat it on his lap" with the barrel facing toward Le. Transcript at 440. Le asked Koch why he had the gun as Koch had never carried a gun at any other time during their relationship, and Koch "wouldn't give [her] any answers, he just said that he wanted [her] to take him to his vehicle" and that she was "going for a trip." *Id.* at 441. On the way to CVS, Koch went through Le's pockets and dismantled her cell phone. Le testified at trial that she did not want to drive Koch to CVS because he had a gun and she was afraid. Le also testified that she believed that she told Koch that she did not want to take him to his vehicle.[8]

The record also reveals that when Le and Koch arrived at the CVS, Koch told Le to pull in next to his vehicle and Le did so, put her vehicle in park, and then Koch reached over and took the keys out of the ignition. Koch then told Le that he was "taking [her] with him," and "to get out of the vehicle, don't run, don't yell for help, don't get anybody's attention." *Id.* at 444. With the gun still on his lap, Koch told her that "he could run faster than [her], and [she] knew what he could do to [her]." *Id.* Le was afraid and unwillingly entered the passenger side of Koch's vehicle.

Based upon the record, we conclude that evidence of probative value was presented at trial from which a jury could find that

---

8. The following exchange occurred during the direct examination of Le:

Q. What happened after that?
A. He told me to take him to his vehicle.
Q. Did you tell him you didn't want to do that?

A. I can't be certain. I believe I did, but I can't be certain.
Transcript at 441.

Koch kidnapped Le. *See Sears v. State*, 668 N.E.2d 662, 670 (Ind.1996) (rejecting the defendant's argument that the evidence of kidnapping was insufficient because the victim voluntarily accompanied him in the car and observing that the victim testified that at some point during the drive the defendant pulled out a gun and told her to keep driving and that she wanted to go back home); *see also State v. McKissack*, 625 N.E.2d 1246, 1248 (Ind.Ct.App.1993) (holding that "there was evidence that a gun was visible on the front car seat and, although McKissack did not handle it during the incident, an inference of imminent threat of force is plausible").

## B.   *Robbery & Battery*

■ Koch does not argue that he did not rob or batter Le but that every element of the robbery and battery offenses was committed outside of Vanderburgh County and neither offense was part of a continuous criminal act that originated in Vanderburgh County. Koch argues that "[t]here is no evidence that Koch's intent to commit battery and robbery originated in Indiana. Indeed, all of the evidence presented at trial establishes that Koch had no intent to batter or rob Le while in Indiana." Appellant's Brief at 26. Koch argues that he "did not intend to turn around and return to Indiana until he reached Albuquerque." *Id.* Koch also argues that he stole Le's debit card "to pay for gas on the return trip to Indiana, a return trip that was never intended while Koch was in Indiana." *Id.* (internal citation omitted).

The State argues that Koch "committed non-stop crimes against Le, which commenced in Indiana, [ ] that [Koch] was armed the entire time," and that "[b]ased on the totality of the evidence, a reasonable jury would have arrived at the conclusion that [Koch] made his initial plans in Indiana, and that any and all of his further acts were either parts of the initial plan or natural consequences of it." Appellee's Brief at 20.

■ Jurisdiction must be proved beyond a reasonable doubt. *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind.2001). Indiana has jurisdiction if either the conduct that is an element of the offense or the result that is an element occurs in Indiana. *Id.;* Ind.Code § 35–41–1–1(b)(1) (Supp.2006).[9] Further, "[w]here a defendant is charged with multiple crimes that are 'integrally related,' jurisdiction over all the crimes is proper if some of them occurred in Indiana." 753 N.E.2d at 628 (quoting *Conrad v. State*, 262 Ind. 446, 450–451, 317 N.E.2d 789, 791–792 (1974)). "Two states can each have concurrent criminal jurisdiction over a crime with the proper nexus to both." *Id.* at 627.

The record reveals that Le made it clear to Koch that she had no intention of going anywhere with him,[10] and repeatedly asked Koch to let her go, saying: "you're kidnapping me, people are going to expect me to be at work, my aunt and uncle are going to come home, they're going to know something's wrong, people are going to know that I'm missing." *Id.* at 447–448.

9.  Ind.Code § 35–41–1–1(b) provides that "[a] person may be convicted under Indiana law of an offense if ... either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana...."

10.  The following exchange occurred during the direct examination of Le:

Q.  While you were in the car, did you express to Mr. Koch you did not want to be there?
A.  Yes.
Q.  About how many, well when was the first time you did that?
A.  Um, immediately almost.
Transcript at 447.

After arriving in Albuquerque, New Mexico, less than twenty-four hours after starting out in Evansville, Koch continued to threaten Le and, shot her in the left ankle. *Id.* at 521. He told Le to give him her debit card and he took the card and bought gas. Le did not eat or drink anything throughout the ordeal and was afraid "the whole time." *Id.* at 529.

Based upon the record, we conclude that evidence of probative value exists from which the jury could have found a continuous transaction beginning with the kidnapping in Indiana and in which the offenses of robbery and battery were integrally related, and that jurisdiction existed in Indiana. *See Conrad v. State,* 262 Ind. 446, 451, 317 N.E.2d 789, 792 (1974) (holding that there was substantial evidence presented from which the jury could find that the assault and abduction of the victim were integrally related to the victim's murder and that the assault and abduction provided an adequate jurisdictional base for appellant's conviction of murder); *Anderson v. State,* 452 N.E.2d 173, 175–176 (Ind.Ct.App.1983) (holding that the evidence established a continuous transaction in which the events in Kentucky were integrally related to the occurrences in Indiana).

### II.

■■■■ The next issue is whether the trial court abused its discretion by rejecting Koch's proposed instruction on jurisdiction. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State,* 783 N.E.2d 1140, 1163 (Ind.2003), *cert. denied,* 540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004). Instruction of the jury is generally within the discretion of

the trial court and is reviewed only for an abuse of that discretion. *Id.* at 1163–1164. When reviewing the refusal to give a proposed instruction, this court considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. *Driver v. State,* 760 N.E.2d 611, 612 (Ind.2002). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Benefiel v. State,* 716 N.E.2d 906, 914 (Ind.1999), *reh'g denied,* *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000).

■■■■ Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Gantt v. State,* 825 N.E.2d 874, 877 (Ind.Ct.App. 2005). An error is to be disregarded as harmless unless it affects the substantial rights of a party. *Oatts v. State,* 899 N.E.2d 714, 727 (Ind.Ct.App.2009); Ind. Trial Rule 61. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State,* 741 N.E.2d 1230, 1233 (Ind.2001). "An instruction error will result in reversal when the reviewing court 'cannot say with complete confidence' that a reasonable jury would have rendered a guilty verdict had the instruction not been given." *Id.* (quoting *White v. State,* 675 N.E.2d 345, 349 (Ind.Ct.App.1996), *reh'g denied, trans. denied* ).

Koch challenges the court's instructions on jurisdiction related to Count III, battery as a class C felony, and Count V, robbery as a class A felony. Koch proposed an instruction which he acknowl-

edges on appeal "uses 'theft' as the template," Appellant's Brief at 21, and states in part:

> The crime of theft is defined by statute as follows:
>
> A person who knowingly exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.
>
> *The law requires that some part of the criminal conduct or result occur in Indiana.*
>
> Before you may convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant
> 2. knowingly or intentionally
> 3. exerted unauthorized control
> 4. over property of another person [*name* ][11]
> 5. with intent to deprive the other person [*name* ] of any part of its value or use, *and*
> 6. *some part of the criminal conduct or result occurred in Indiana.*
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of theft, a Class D felony, charged in Count _____.

Appellant's Appendix at 74(b)–74(c). Koch also proposed the following instruction "of the defendant Matthew Koch re continuous criminal act taken from Conrad case:"

> '... if you find from the evidence that the robbery / battery of the said Lien Kim Le occurred in a state other than Indiana, but that the robbery / battery was not a part of a common plan, design, and intent to rob / batter said Lien Kim Le which is alleged to have originated in Vanderburgh County, Indiana, and was not part of one continuous course of action by the defendant which originated and commenced in Vanderburgh County, Indiana, but that elements of robbery and/or battery were arrived at and the actual battery and/or robbery occurred in a state other than Indiana and that such intent and action originated there and after the commission of any alleged offense in the State of Indiana and that the same was not part of one continuous plan, design and intent, and not the result of one continuous course of action by the defendant, but was a separate and independent set of acts occurring outside of the State of Indiana, then the State of Indiana would have no jurisdiction to prosecute the defendant for the offense of robbery/battery as charged in the third / fifth count of the information and you must find the defendant not guilty as to the third / fifth count of the information.'
>
> *Conrad v. State*, 262 Ind. 446, 317 N.E.2d 789 (1974)

*Id.* at 74(d).

The court rejected Koch's instructions and as to Count III, battery as a class C felony, gave Instruction 4 which stated in part:

> As to Count 3, the law of jurisdiction requires that either 1) some part of the criminal conduct or result occurred in Indiana, or 2) that the crimes charged against the defendant are integrally related and some of the crimes occurred in Indiana. Before you convict the Defendant in Count 3, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Matthew Erin Koch
> 2. knowingly
> 3. touched Lien Kim Le

---

11. Bracketed text appears in original.

4. in a rude, insolent, or angry manner,

5. the touching was committed by means of a deadly weapon, and

6. Either a) some part of the criminal conduct or result occurred in Indiana or b) that the crimes charged against the defendant are integrally related and some of the crimes occurred in Indiana.

Transcript at 648.

With respect to Count V, robbery as a class A felony, the court's Instruction 6 stated:

As to Count 5, the law of jurisdiction requires that either 1) some part of the criminal conduct or result occurred in Indiana; or 2) that the crimes charged against the defendant are integrally related and some of the crimes occurred in Indiana. Before you may convict the Defendant in Count 5, the State must have proved each of the following beyond a reasonable doubt:

1. The Defendant, Matthew Erin Koch,

2. knowingly

3. took property, to-wit: a credit card, from the person and/or presence of Lien Kim Le

4. by using or threatening the use of force on Lien Kim le

5. the offense resulted in serious bodily injury to Lien Kim Le; and

6. either a) some part of the criminal conduct or result occurred in Indiana, or b) that the crimes charged against the defendant are integrally related and some of the crimes occurred in Indiana.

*Id.* at 650.

Koch argues that "the language, 'integrally related,' has never been approved as an instruction on jurisdiction" and that "[t]his language has been employed solely when appellate courts review the sufficiency of the evidence supporting venue or jurisdiction." Appellant's Brief at 18. Koch argues that "[t]he term 'integrally related' is vague at best" and that "[t]his language in no way communicates to the jury *how* crimes must be integrally related, or conversely, *when* the crimes will be considered separate and distinct." *Id.* at 19.

Koch argues that he was prejudiced by the court's instruction because "there is no evidence that he ever intended to commit robbery and battery while in Indiana." *Id.* at 23. He asserts that his "plan was to take Le to California because he did not believe that he could make it on his own without her," and that "[i]t was not until they reached Albuquerque that Koch changed his mind and began to believe that Le was out to get him." *Id.* Koch argues that "[a]t that time, his intention changed from his original frame of mind in Indiana" and that "[h]e believed that he needed to shoot Le and take her debit card because he was being pursued by her conspirators." *Id.*

The State argues that the court's instructions were correct based upon the applicable case law, and that the term "integrally related" is "far from being a confusing legal term that ordinary citizens who speak the English language would not be able to understand." Appellee's Brief at 18. The State asserts that the court's instructions were "far clearer than [Koch's] own instruction, directly taken from *Conrad.*" *Id.* The State also argues that any error was harmless because "[a]ccording to the jury instruction approved in *Conrad,* as long as there is a continuous plan, design, or intent and a continuous course of action by the defendant, which commenced in Indiana, an Indiana jury may find the defendant guilty of an out-of-state offense," and "[t]hat is exactly what happened here." *Id.*

■ The Indiana Supreme Court has used the "integrally related" language in *Alkhalidi* and *Conrad.* *See Alkhalidi,* 753 N.E.2d at 628; *Conrad,* 262 Ind. at 451, 317 N.E.2d at 792. We acknowledge that, as the Court noted in *Ludy v. State,* "[t]he mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury." 784 N.E.2d 459, 461 (Ind.2003). However, even assuming that the trial court abused its discretion in instructing the jury, we conclude that any error is harmless. Based on the record as previously discussed, the battery and robbery were part of one continuous course of action and not separate and independent acts. We conclude that the jurisdictional element of the convictions for battery and robbery was clearly sustained by the evidence and the jury could not properly have found otherwise. *See Ham v. State,* 826 N.E.2d 640, 642 (Ind.2005) (holding that, while the instruction was erroneous, the error was harmless in light of the evidence the State produced of the defendant's guilt).

### III.

■ The next issue is whether Koch's convictions for criminal confinement and kidnapping violate Indiana's prohibition against double jeopardy or the continuing crime doctrine.

Koch argues that his convictions for criminal confinement and kidnapping violate the continuous crime doctrine because "from the time Le was confined in her car until her confinement in Oklahoma City, Le was continuously confined," and that "the confinement underlying the kidnaping [sic] charge continued until [he] was apprehended in Oklahoma City and Le, for the first time, was freed from her confinement." Appellant's Brief at 29. Koch also argues that the criminal confinement and kidnapping convictions violate double jeopardy because the same evidence was used to establish both convictions of criminal confinement and kidnapping. Koch requests that we vacate both criminal confinement convictions.

The State argues that Koch's double jeopardy protections were not violated when he was convicted of both criminal confinement and kidnapping, and that "[e]ven though there was no time between the end of the kidnapping and the beginning of the confinement, there was still a break in the events because [Koch] and the victim left her vehicle and entered his vehicle." Appellee's Brief at 24. The State argues that "[t]he fact that the victim did not feel free to leave while the two changed cars should not mean that [Koch] is only responsible for one act of kidnapping, which probably lasted five minutes in Vanderburgh." *Id.*

■ The continuing crime doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime and prevents the State from charging a defendant twice for the same continuous offense. *Buchanan v. State,* 913 N.E.2d 712, 720 (Ind.Ct.App. 2009), *trans. denied.* This doctrine "essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Firestone v. State,* 838 N.E.2d 468, 471 (Ind.Ct.App.2005). The doctrine applies in those situations where a defendant is charged multiple times with one offense or when a defendant is charged with an offense and a lesser included offense. *Walker v. State,* 932 N.E.2d 733, 737 (Ind.Ct.App.2010), *reh'g denied.*

■ "Crimes such as kidnapping and the lesser included offense of confinement are defined under the continuing crime doctrine." *Bartlett v. State,* 711 N.E.2d 497, 500 (Ind.1999). "Under this doctrine, the span of the kidnapping or confinement is determined by the length of time of the unlawful detention necessary to perpetrate the crime. It begins when the unlawful detention is initiated and ends only when the victim both feels, and is in fact, free from detention." *Id.*

The record reveals that Le indicated that she was afraid of Koch "the whole time." Transcript at 529. She testified that she did not ask for help from others because she did not want "to get hurt" or want "anyone else to get hurt." *Id.* at 449. Based upon the record, we conclude that the unlawful detention did not end until Koch was arrested in Oklahoma City. *See Bartlett,* 711 N.E.2d at 500–501 (observing that the unlawful detention began when the defendant pointed the gun at the victim and ended when the victim escaped and that at no point before the victim's escape was he free to go because the victim "was either tied up, under the control of the gun, or acting under the threat or fear of force"); *see also Boyd v. State,* 766 N.E.2d 396, 400 (Ind.Ct.App.2002) ("A confinement ends when the victim both feels and is, in fact, free from detention, and a separate confinement begins if and when detention of the victim is re-established."). Accordingly, we vacate Koch's convictions for Counts I and II, criminal confinement as class B felonies. *See Hopper v. State,* 475 N.E.2d 20, 27 (Ind.1985) (holding that "when, as here, there is a charge of Kidnapping and a charge of Confinement, a conviction of the greater merges with the lesser"); *Taylor v. State,* 879 N.E.2d 1198, 1203 (Ind.Ct.App.2008) (rejecting the State's argument that the defendant could be charged with kidnapping and confinement when the defendant confined the

children beyond the point when the hijacking was completed and holding that "[a]lthough [kidnapping and confinement] are distinct acts, they are one chargeable offense if the confinement was continuous").

## IV.

■ The next issue is whether the court abused its discretion in sentencing Koch. The Indiana Supreme Court has held that "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind.2007). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

Koch argues that "the record before the trial court contained overwhelming evidence that Koch suffered from a mental illness at the time he committed the of-

fense." Appellant's Brief at 34. He points to his own testimony in which he informed the court that he would refuse to cooperate with any competency evaluation and informed jail personnel that he shot Le in self defense because people were trying to poison him. Koch also points to the fact that the court declared him to be incompetent at one point.

■■■ Koch did not argue at the sentencing hearing that his alleged mental illness constituted a mitigating circumstance.[12] As a result, we cannot say that the court abused its discretion in failing to consider any alleged mental illness as a mitigating circumstance. See Anglemyer, 868 N.E.2d at 492 (noting that "[a]s our courts have determined in the past, the trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing"); see also Carter v. State, 711 N.E.2d 835, 838–839 (Ind.1999) (holding that the trial court did not abuse its discretion in failing to consider a mitigating circumstance which was not raised at sentencing); Creekmore v. State, 853 N.E.2d 523, 530 (Ind.Ct.App.2006) (noting that "if the defendant fails to advance a mitigating circumstance at sentencing, this court will presume that the factor is not significant, and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal"), clarified on denial of reh'g, 858 N.E.2d 230.

## V.

■■■ The next issue is whether Koch's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind.2006). Koch argues that he committed these crimes because "he earnestly believed that there was a conspiracy against him and concomitantly because he had to protect himself from being killed." Appellant's Brief at 38. Koch points to his single conviction of conversion as a misdemeanor in 1999 and his military service and requests that he receive an aggregate sentence of twenty-five years.

Our review of the nature of the offense reveals that on the evening of July 17, 2008, Koch pulled a gun on Le, told her to take him to his vehicle, and said that she was "going for a trip." Transcript at 441. Koch searched Le's pockets and dismantled her cell phone. Despite Le's pleas that she did not want to go with him, Koch left Indiana with her, fired his gun out of the sun roof window, and drove to New Mexico. While Le was driving, Koch grabbed her by the neck, choked her with his left hand, and "smacked" her in the face with his right hand. Id. at 454. He

12. At the sentencing hearing, Koch's attorney asked the court to consider Koch's lack of a criminal history as a mitigating factor. The following exchange then occurred:
[Koch's Attorney]: I would also indicate to the Court, obviously the Court heard all the testimony and was present during the trial. I'd ask the Court to take that into consideration. Certain things also that I may want to address, I think have been gone over

between Mr. Koch and myself at specific hearings in front of this Court, and he has requested that I not discuss certain matters with the Court as part of his defense, and I think as part of his sentencing. Is that right, Matt?
[Koch]: Yes.
[Koch's Attorney]: So we can leave it at that. Sentencing Transcript at 8–9.

later punched her in the chest and hit her in the face, neck, and chest. After telling her to exit the vehicle, he shot Le in her left ankle, kicked her in the stomach and rib area, and placed his gun in her mouth. He then wrapped string around her mouth and later placed a sock in her mouth and again wrapped the string around her mouth. Koch then took her debit card and used it to purchase gas.

Our review of the character of the offender reveals that Koch has two misdemeanor convictions from 1999 and 2002. In 2003, he was charged with three counts, but these charges were dismissed "on motion of state." Appellant's Appendix at 79. In 2007, Koch was charged with battery resulting in bodily injury but this charge was also dismissed "on motion of state without prejudice." *Id.* Koch enlisted in the United States Army in 1999 and was charged with "Wrongful Use of Marijuana" in 2002 and received "Extra Duty for 45 days, fined $552.00, restricted for 45 days." *Id.* In 2002, he was honorably discharged. While Koch repeatedly stated that he was competent and not insane and refused to allow his attorney to argue that he was not guilty by reason of mental disease or defect or guilty but mentally ill, we observe that the trial court found Koch to be incompetent at one point. We also observe the testimony at trial that he believed that someone was trying to kill him, that there was a conspiracy against him, and that he was hearing voices coming from the speakers of his vehicle causing him to rip the speakers out. We also note that the presentence investigation report included the recommendation that Koch be sentenced to an aggregate thirty years executed, including concurrent advisory terms on Counts III, IV, and V.

After due consideration and under the circumstances, we conclude that the imposition of the forty-five year aggregate sentence is inappropriate. Accordingly, we reverse and remand with instructions to impose concurrent sentences of six years for Count III, battery as a class C felony, thirty years for Count IV, kidnapping as a class A felony, and thirty years for Count V, robbery as a class A felony, for an aggregate sentence of thirty years.

For the foregoing reasons, we affirm Koch's convictions for battery, kidnapping, and robbery, reverse Koch's convictions for criminal confinement, and remand to revise Koch's sentences in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

ROBB, C.J., concurs.

RILEY, J., concurs in part and dissents in part with separate opinion.

RILEY, Judge, concurring in part and dissenting in part.

Whereas I agree with the majority's analysis and conclusion in parts I–IV, I respectfully dissent from its conclusion in part V. In part V of the opinion, the majority revises Koch's sentence downward to an aggregate sentence of thirty years. However, based on the evidence in the record, I conclude that Koch's sentence is appropriate in light of nature of the offence and character of the offender. I would affirm the trial court's imposition of an aggregate sentence of forty-five years.