## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 25 2018, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Diego A. Pacheco-Manzo, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 25, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-252 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Hon. Thomas H. Busch, <br> Senior Judge <br><br> Trial Court Cause No. <br> 79D05-1612-CM-4399 |

**Bradford, Judge.**

# Case Summary

Diego Pacheco-Manzo and Josefa Garcia have three children ("the Children") together. In May of 2015, while Pacheco-Manzo was incarcerated, Garcia obtained a protective order that, *inter alia*, enjoined Pacheco-Manzo from contacting or communicating with her. Later in 2015 and into 2016, Pacheco-Manzo sent several letters to Garcia, sometimes addressed to one of the Children but directed to her and sometimes using a pseudonym. In these letters, Pacheco-Manzo encouraged Garcia to commit suicide, insulted her, and threatened her directly and indirectly. The State charged Pacheco-Manzo with two counts of Class A misdemeanor invasion of privacy, and the trial court found him guilty as charged. The trial court imposed an aggregate sentence of twenty-one months of incarceration. Pacheco-Manzo contends that his two convictions violate the continuing-crime rule and that his sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

Garcia and Pacheco-Manzo were romantically involved in the past and are the parents of the three Children. On May 22, 2015, Garcia sought and obtained a protective order against Pacheco-Manzo, who was then incarcerated following a conviction for dealing in cocaine. Garcia sought the order because Pacheco-Manzo had been sending her threatening letters from prison. The order provided, in part, as follows: "The Respondent is hereby enjoined from threatening to commit or committing acts of domestic or family violence,

stalking or a sex offense against the Petitioner [and] is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the Petitioner." Ex. 1. The order was personally served on Pacheco-Manzo on September 28, 2015.

[3] Beginning in October 2015, and continuing through the end of the year, Pacheco-Manzo mailed a number of letters to the Children in which, *inter alia*, he complained about Garcia and the protective order. One letter, sent in December 2015, was directed at Garcia. In the letter, Pacheco-Manzo accused Garcia of interfering with his contact with the Children and wrote, "[d]o this favor for me, put the rope on your neck and save me the work." Tr. Vol. II p. 30; Ex. 4.

[4] In 2016, Pacheco-Manzo continued to write to Garcia. In a letter mailed on February 27, 2016, Pacheco-Manzo wrote, "I know that I'm doing wrong by writing these letters because of the restriction that you put on us." Tr. Vol. II p. 42; Ex. 9. In early March 2016, Pacheco-Manzo wrote Garcia again, accusing her of ruining his life and stating that he hoped Garcia felt cold from "head to toe" at the thought of his release from prison because, "I have nothing else to lose." Tr. Vol. II pp. 45, 46; Ex. 11. The letter also said, "[G]ood luck I think you will need it." Tr. Vol. II p. 46; Ex. 11.

[5] Two additional letters, mailed on April 5 and April 11, 2016, purport to be from an "Omar Otero" using two different DOC numbers. Exs. 12, 13. Garcia, however, recognized the handwriting as Pacheco-Manzo's. In the April 5,

2016, letter Pacheco-Manzo wrote, as translated verbatim from Garcia's Spanish testimony during trial,

> They say that it's a coward action but people that watch the news don't think that those women who get killed by husband are women that like you that do these bad things that you did to done to Mr. Diego. After that guys get out of jail and those women are the ones that end up in a river or in a trashcan with the mouth full of flies. But you know well that it was well deserved because of w***** like you.

Tr. Vol. II p. 50. Pacheco-Manzo also told Garcia that she was a "gonorrhea of a human[.]" Tr. Vol. II p. 51.

[6] In the April 11, 2016, letter Pacheco-Manzo, again pretending to be Otero, demanded to know if Garcia had reported Pacheco-Manzo's letter-writing to the court. "Otero" claimed that because of Pacheco-Manzo's letters, they gave Pacheco-Manzo "six months in the hole […] six more months in prison and all thanks to you." Tr. Vol. II p. 52; Ex. 13. "Otero" threatened Garcia: "I tell you one thing, [Garcia], I don't want to put you in fear but the mister is going to kill you. He only wants to get out of here just for that, he doesn't think about anything else". Tr. Vol. II p. 52; Ex. 13. Garcia provided Pacheco-Manzo's letters to police.

[7] On December 6, 2016, the State charged Pacheco-Manzo with two counts of Class A misdemeanor invasion of privacy, one occurring in 2015 and the second in 2016. Following a bench trial held on January 8, 2018, the trial court found Pacheco-Manzo guilty of the first charge for a 2015 letter addressed to one of the Children that indirectly tried to contact Garcia and a second 2015

letter written directly to Garcia. The trial court found Pacheco-Manzo guilty of the second charge for three letters he wrote to Garcia in 2016, including the two letters in which he pretended to be Otero. The trial court sentenced Pacheco-Manzo to nine months of incarceration for the first invasion of privacy charge and to one year for the second. The trial court ordered Pacheco-Manzo's sentences to be served consecutively to each other, for an aggregate sentence of twenty-one months, and consecutively to his drug-dealing sentence.

# Discussion and Decision

## I. Continuing-Crime Rule

[8] Pacheco-Manzo contends that one of his two convictions for invasion of privacy must be vacated because they violate the continuing-crime rule. Pursuant to the continuing-crime rule, actions sufficient in themselves to constitute multiple instances of the same offense, but which are "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction," can support only one conviction and sentence. *Walker v. State*, 932 N.E.2d 733, 735–36 (Ind. Ct. App. 2010) (citing *Riehle v. State*, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), *trans. denied*). The rule "defines those instances where a defendant's conduct amounts to only a single chargeable crime" and prevents a defendant from being charged and punished "twice for the same continuous offense." *Firestone v. State*, 838 N.E.2d 468, 471–72 (Ind. Ct. App. 2005). This Court reviews *de novo* claims that

convictions violate the continuing-crime rule. *Frazier v. State*, 988 N.E.2d 1257, 1262 (Ind. Ct. App. 2013).

[9] While Pacheco-Manzo's actions may have shared a "singleness of purpose," his convictions for invasion of privacy do not meet the test for a continuing crime, which also requires a compression of actions and place. *Walker*, 932 N.E.2d at 735–36. It seems clear to us that the point of the continuing-crime rule is to allow only one punishment for what is a single decision to commit a single offense such that "a defendant's conduct amounts only to a single chargeable crime." *Koch v. State*, 952 N.E.2d 359, 373 (Ind. Ct. App. 2011), *trans. denied*. Here, each of the three letters Pacheco-Manzo wrote Garcia was a separate, deliberate communication separated from the others by weeks or months. (Def. Br. 11; Tr. Vol. II, 29-31, 42, 45-46, 47-49; Exs. 4, 9, 12, 13). In other words, Pacheco-Manzo delivered each of his threats to Garcia after having had more than enough time to form a separate criminal intent. This passage of time, by itself, takes this case outside of the scope of the continuing-crime rule and distinguishes it from cases where we have concluded that it applied. *Compare Firestone v. State*, 838 N.E.2d 468, 472 (Ind. Ct. App. 2005) (concluding that continuing-crime doctrine did not apply to vacate either one of defendant's convictions for rape and deviate sexual conduct where defendant "knowingly had sexual intercourse with [the victim and then] climbed on top of her, held her down, and made her perform oral sex on him") *with Gomez v. State*, 56 N.E.3d 697, 703 (Ind. Ct. App. 2016) (vacating multiple domestic-battery convictions for three touchings committed in the space of three minutes during

which defendant tried to end victim's entry into residence) *and Nunn v. State*, 695 N.E.2d 124, 125 (Ind. Ct. App. 1998) (vacating multiple attempted murder convictions when defendant fired five shots at one victim in the space of a few seconds). Pacheco-Manzo has failed to establish that his two convictions for invasion of privacy violate the continuing-crime rule.

## II. Appropriateness of Sentence

[10] Pacheco-Manzo also contends that his sentence is inappropriately harsh. Pacheco-Manzo was convicted of two counts of Class A misdemeanor invasion of privacy, punishable by up to one year of incarceration for each conviction and received an aggregate sentence of twenty-one months. *See* Ind. Code § 35-50-3-2. This Court will revise a sentence only if, upon "due consideration of the trial court's decision" it nonetheless appears that "the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B); *Anglemyer v. State*, 868 N.E.2d 482, 490–91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). The "nature of the offense" refers to the defendant's acts in comparison with the elements of his offense, *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008), while "character of the offender" refers to general sentencing considerations and the relevant aggravating and mitigating circumstances. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Pacheco-Manzo has the burden to show his sentence is inappropriate in light of both the nature of the offense and his character. *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013). This can only be done with "compelling evidence

portraying in a positive light the nature of the offense … and the defendant's character." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[11] As for the nature of Pacheco-Manzo's crimes, they go far beyond what was necessary to establish invasion of privacy. Any contact at all with Garcia, even cordial communication, was sufficient to establish invasion of privacy. Pacheco-Manzo's communications, however, were far from cordial. In 2015, Pacheco-Manzo encouraged Garcia to commit suicide to save him the trouble and progressed to directly threatening her life the next year. Pacheco-Manzo attempts to minimize the impact his letters had on Garcia, noting that he was incarcerated at the time and could not then harm her. This argument, however, overlooks the fact that his threats were that he would harm her when released, not at the time he wrote the letters. The seriousness of Pacheco-Manzo's offenses does not tend to show that his aggregate sentence of one year and nine months was inappropriate.

[12] As for Pacheco-Manzo's character, it also does not warrant a reduction in his sentence. As Pacheco-Manzo concedes, he is already serving a twenty-five-year sentence for drug dealing and has an unresolved charge of domestic battery. Pacheco-Manzo's claims of concern for his children, expressed in letters that are not punished by his sentence, is undercut by the fact that he wrote other letters to Garcia in which he humiliated and insulted her and threatened her life. Moreover, Pacheco-Manzo's alleged profession of remorse shows, if anything, a reluctance to acknowledge and appreciate the wrongfulness of his conduct. Pacheco-Manzo told the trial court, "I want to ask the forgiveness of

Miss Garcia *if I offended her in something* but it was all for my children. I did not try to harm her and I wouldn't do it, I've already been punished in prison *for cards I supposedly sent*." Tr. Vol. II p. 70 (emphases added). Pacheco-Manzo seems to deny sending the letters, even after conviction. Moreover, calling Garcia a "w****" and "gonorrhea" who should be murdered and dumped in the trash goes far beyond being merely offensive. Pacheco-Manzo also does not explain how threating to kill the Children's mother would help them. Pacheco-Manzo has not established that his character warrants a reduction in his sentence.

[13] Finally, Pacheco-Manzo claims that Indiana law favors concurrent sentences for crimes committed against the same victim. We are unpersuaded that Indiana law establishes any such preference. Indeed, the Indiana Supreme Court has observed that "additional criminal activity directed to the same victim should not be free of consequences." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The Indiana Supreme Court has also noted that "[t]he basis for the gross impact that consecutive sentences may have is the moral principle that each separate and distinct criminal act deserves a separately experienced punishment." *Powell v. State*, 895 N.E.2d 1259, 1263 (Ind. Ct. App. 2008). While Pacheco-Manzo cites to cases in which the imposition of consecutive sentences was found to be inappropriate where the crimes were committed against one victim, *see, e.g.*, *Sanchez v. State*, 938 N.E.2d 720, 722–23 (Ind. 2010); *Monroe v. State*, 886 N.E.2d 578, 580–81 (Ind. 2008); *Harris v. State*, 897 N.E.2d 927, 929–30; *Walker v. State*, 747 N.E.2d 536, 538 (Ind. 2001), none

stands for the proposition that Indiana law generally favors concurrent sentences in such cases. Pacheco-Manzo has failed to establish that his twenty-one-month aggregate sentence is inappropriate.

[14] The judgement of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.