## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 26 2018, 7:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew J. Gilbert, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 26, 2018 <br><br> Court of Appeals Case No. 18A-CR-1194 <br><br> Appeal from the Clinton Circuit Court <br><br> The Honorable Bradley K. Mohler, Judge <br><br> Trial Court Cause No. 12C01-1709-F5-950 |

**Najam, Judge.**

## Statement of the Case

Matthew J. Gilbert appeals his conviction for escape, as a Level 5 felony, following a bench trial.[1] Gilbert raises a single issue for our review, which we restate as whether the State presented sufficient evidence to show that he was under lawful detention when he committed his alleged escape. We affirm.

## Facts and Procedural History

On September 3, 2017, law enforcement officers in Clinton County responded to a report of a gunshot inside a residence. In particular, Stephanie Creasy, an occupant of the residence, reported that Gilbert was inside, was "suicidal," and "wanted to go out in a blaze of glory." Tr. at 9. According to the information available to the responding officers, Gilbert was "in possession [of] several firearms as well as body armor and . . . possibly had long range capabilities." *Id.* at 8.

Responding officers staged themselves at a reasonable distance from the residence and attempted to communicate with Gilbert, who was still inside the residence. Officers then saw Gilbert exit the residence and proceed toward a nearby wooded area. The officers were concerned that he was "familiar with the property" while they were not, and that he could "sneak around and possibly . . . ambush . . . law enforcement." *Id.* at 11.

---

[1] Gilbert does not appeal his contemporaneous convictions for intimidation, as a Level 6 felony, or resisting law enforcement, as a Class A misdemeanor.

[4] Officers located Gilbert inside the woods, and Clinton County Sheriff's Deputy Dennis Tillman gave "loud commands for him to stop." *Id.* at 12. Instead, Gilbert fled back toward his residence. Deputy Tillman pursued on foot and "grabbed a hold of" Gilbert; Gilbert then grabbed "one of the trees . . . to prevent" himself from "being detained." *Id.* at 13. In the ensuing scuffle, Gilbert attempted to grab Deputy Tillman and was "in close proximity to Deputy Tillman's weapons." *Id.* Mulberry Deputy Town Marshall Jeremy Rushton, who was nearby, discharged his taser into Gilbert to regain control of the situation. Deputy Rushton then ordered Gilbert to put his hands behind his back, but Gilbert refused to comply. Deputy Rushton tased Gilbert again, after which officers were able to secure Gilbert in handcuffs.

[5] Pursuant to local policy for suicide calls, officers escorted Gilbert to EMS providers on the scene for those providers to determine if "there's any need to go further." *Id.* at 42. However, Gilbert "refused all medical treatment" on the scene, denied that he was suicidal, and "didn't even want the [taser] probes removed from him . . . ." *Id.* at 14. Due to his refusal to be assessed at the scene, Clinton County Sheriff's Lieutenant Ronald Blackwell transported Gilbert to a local hospital "for evaluation by an ER doctor" and to have the doctor determine "whether or not the subject needs to be detained for an emergency detention order." *Id.* at 42.

[6] In the emergency room, Gilbert again refused to cooperate or be evaluated. When the treating doctor suggested that officers might need to proceed with an emergency-detention order in light of Gilbert's noncooperation, Gilbert got

"amped up and didn't wan[t to] be in the ER" and said "he was go[ing to] start destroying things." *Id.* at 43. Lieutenant Blackwell then took Gilbert out of the emergency room and into the ambulance bay with Clinton County Sheriff's Deputy D.A. Sturgis and a hospital security officer, Cameron Carlson. Lieutenant Blackwell then called the local prosecutor to determine whether to release Gilbert "without knowing what his mental status was" or to "go ahead and arrest him for resisting law enforcement." *Id.* at 43. Lieutenant Blackwell later clarified that the concern "with simply arresting him at that point was that he could bond right out without receiving any evaluation or any help." *Id.* at 50.

[7] Gilbert "understood" that he "was in detention" and "not free to go" while at the hospital. *Id.* at 51, 60. Nonetheless, after Lieutenant Blackwell had dropped him off at the ambulance bay, Gilbert "immediate[ly] bolt[ed] . . . to the doorway" and "attempted to plow through still handcuffed . . . ." *Id.* at 58. After Gilbert had fled ten to fifteen feet, Deputy Sturgis and Carlson reapprehended him. Gilbert than began to "verbally abuse" Carlson. *Id.* at 59.

[8] The State charged Gilbert with escape, as a Level 5 felony; intimidation (of Carlson), as a Level 6 felony; and resisting law enforcement, as a Class A misdemeanor. The State's charge for escape was based on Gilbert fleeing from "lawful detention" at the hospital. Appellant's App. Vol. 2 at 6. The State's charge for resisting law enforcement was based on Gilbert's resisting of Deputy Tillman at the residence "and/or" Deputy Sturgis at the hospital. *Id.* at 8.

In the State's ensuing closing argument to the court at trial, the prosecutor argued that the evidence, which included the testimony of each of the above officers, showed that Gilbert had "resisted" Deputy Tillman in the woods at the residence. Tr. at 68. The prosecutor then argued that, while Gilbert was "[s]till detained" at the hospital, Gilbert "decide[d] to get up and run." *Id.* In rebuttal, the prosecutor clarified that Gilbert "was getting arrested for resisting [at the residence]. So he was in detention [at the hospital]. He was in lawful detention when he chose to leave from that lawful detention." *Id.* at 70. The trial court specifically found Gilbert guilty of resisting law enforcement based on his resistance of Deputy Tillman at the residence. *Id.* at 72. The court then also found Gilbert guilty of escape and intimidation and entered judgment of conviction and sentence accordingly. This appeal ensued.

## Discussion and Decision

Gilbert appeals his conviction for escape, as a Level 5 felony. Although Gilbert frames his argument on appeal otherwise, this appeal challenges the sufficiency of the evidence supporting his conviction. As our Supreme Court has stated:

> When an appeal raises "a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finder's 'exclusive province to weigh conflicting evidence.'" *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011) (quoting *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001)). We consider only the probative evidence and the reasonable inferences that support the verdict. *Tharp v. State*, 942 N.E.2d 814, 816 (Ind. 2011). "We will affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant

guilty beyond a reasonable doubt.'" *Joslyn*, 942 N.E.2d at 811 (quoting *Tobar v. State*, 740 N.E.2d 109, 111-12 (Ind. 2000)).

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018).

[11]    To show that Gilbert committed escape, as a Level 5 felony, the State was required to show that Gilbert intentionally fled "from lawful detention . . . ." Ind. Code § 35-44.1-3-4(a) (2018). The Indiana Code defines "lawful detention" as follows:

> "Lawful detention" means:
>
> (1) arrest;
>
> (2) custody following surrender in lieu of arrest;
>
> (3) detention in a penal facility;
>
> (4) detention in a facility for custody of persons alleged or found to be delinquent children;
>
> (5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;
>
> (6) detention for extradition or deportation;
>
> (7) placement in a community corrections program's residential facility;
>
> (8) electronic monitoring;

(9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes.

I.C. § 35-31.5-2-186(a).

[12]   According to Gilbert:

> At the time [he] committed the alleged escape, he was not under arrest. The police detained Gilbert and transported him to a local hospital in an attempt to obtain a medical evaluation and perhaps an emergency detention order. This circumstance falls outside the statutory definition of "lawful detention" as required for felony escape.

Appellant's Br. at 12. That is, Gilbert argues that being escorted by law enforcement officers to a hospital for the officers to obtain a medical evaluation to determine whether an emergency detention order is necessary is not an arrest and is not "any other detention for law enforcement purposes" pursuant to Indiana Code Section 35-31.5-2-186(a)(10). Gilbert then argues that certain canons of statutory construction require this Court to narrowly construe Indiana Code Section 35-31.5-2-186(a)(10) such that it does not apply here.

[13]   Gilbert's argument on appeal is not well taken. Officers did not escort him to the hospital merely for a mental-health evaluation. Rather, the evidence most favorable to his conviction demonstrates that he resisted arrest at his residence when he fled from Deputy Tillman's lawful command for him to stop and then

refused to submit to Deputy Tillman's attempt to place him in handcuffs. Indeed, the trial court expressly found Gilbert guilty of resisting law enforcement, as a Class A misdemeanor, based on those facts, and Gilbert does not challenge that conviction on appeal.

[14] Accordingly, the evidence most favorable to Gilbert's conviction for escape shows that officers had placed Gilbert under arrest at the residence for resisting law enforcement, although pursuant to sound local policy for potentially suicidal persons the officers then escorted him to a local hospital rather than to the jail. At the hospital, Gilbert "understood" that he "was in detention" and "not free to go." Tr. at 51. And, while Lieutenant Blackwell testified that he had asked the prosecutor at the hospital whether officers should "go ahead and arrest" Gilbert for resisting, *id.* at 43, we think it is clear that Lieutenant Blackwell did not mean the initial arrest of Gilbert but instead meant whether the officers should complete the booking process. Indeed, Lieutenant Blackwell clarified that his concern was that completing the booking process without a mental evaluation would simply allow Gilbert to "bond right out without receiving . . . any help." *Id.* at 50. Thus, the State presented sufficient evidence to show that Gilbert was under arrest while at the hospital and, as such, under lawful detention.

[15] We also note that "lawful detention" includes "custody for purposes incident" to arrest. I.C. § 35-31.5-2-186(a)(9). Hence, even if the evidence were not sufficient to show that officers had placed Gilbert under arrest at the residence, there is no question that the evidence is sufficient to show that the officers

nonetheless had taken him into their custody incident to making a determination whether to arrest him. The State's evidence is sufficient to show that Gilbert was in lawful detention under that subsection as well.

[16] We hold that the State presented sufficient evidence to show that Gilbert was under lawful detention while he was handcuffed at the hospital after his having resisted law enforcement officers at his residence. Accordingly, the State presented sufficient evidence to show that Gilbert committed escape, as a Level 5 felony, when he fled from lawful detention. We affirm his conviction.

[17] Affirmed.

Pyle, J., and Altice, J., concur.