## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 22 2019, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Petersen
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David C. Hunt,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 22, 2019

Court of Appeals Case No.
18A-CR-3102

Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause No.
20D02-1709-F5-238

**Sharpnack, Senior Judge.**

# Statement of the Case

Hunt appeals after a jury trial from his conviction for escape as a Level 5 felony.[1] He challenges the sufficiency of the evidence supporting his conviction, specifically challenging the evidence that he had the requisite mens rea for the offense. We affirm.

# Issue

Hunt presents one issue for our review, which we restate as the following question: Did Hunt have the requisite mens rea to commit escape as a Level 5 felony?

# Facts and Procedural History

At the beginning of May 2017, Hunt was sentenced in Elkhart Superior Court to serve a portion of incarceration at the Elkhart County Work Release Center, which is operated by the Elkhart County Community Corrections program. A new arrival at the facility meets with their case manager within 48 hours upon arrival. Case managers ensure that inmates have the proper identification to work and make arrangements to release the inmates to acquire identification from the Bureau of Motor Vehicles and the Social Security Administration. Inmates are not released from the work release facility during the first seven days of their arrival.

---

[1] Ind. Code § 35-44.1-3-4 (2014).

[4]    Hunt's case manager was Cammi Waggoner. She gave him passes to leave the facility on July 13 and July 14, 2017. Standard policy at the facility involves logging the passes into the computer system, a task done directly by the case manager. That allows for the passes not to be recorded on paper and for other employees at the facility to access the information via the computer. More specifically, Hunt was to go to the BMV on July 13, 2017, and to the Social Security Administration office on July 14, 2017. Waggoner communicated the terms of these releases to Hunt. She did not issue a pass for Hunt to leave the facility on July 12, 2017 and never met with Hunt thereafter.

[5]    On July 12, 2017, Hunt showed up at the front desk where Jeff Yaddow, a security officer, was working at the Elkhart County Work Release Center. One of Yaddow's duties was to allow inmates to leave the center to go to work or other appointments such as getting identification cards at the BMV.

[6]    Hunt asked to be released on a pass. Yaddow scanned Hunt's identification card and saw that the computer indicated there was an error. In other words, Hunt was not authorized to leave. Yaddow told Hunt that he needed to speak with his case manager, Waggoner, because the computer did not show that Hunt was authorized to leave on that day. Yaddow never told Hunt that he had permission to leave.

[7]    Yaddow did tell Hunt that, as a courtesy, he would release Hunt's property that had been transferred from the county jail. Normal procedure was that personal property could be left in a locker in the locker room and was not allowed in the

living areas of the facility. Yaddow told Hunt that he would have to perform a search of Hunt before he could return from the locker room area to the living areas of the facility in order to contact Waggoner. Another officer replaced Yaddow at the front desk while Yaddow took a short break.

[8] After his break was over, Yaddow returned with Hunt's property. Yaddow then realized he had forgotten to have Hunt sign a form stating that the property had been released to Hunt. Yaddow retrieved the form, had Hunt sign it, and Hunt then took his belongings to the locker room.

[9] Inmates at the Elkhart work release facility use an exit in the locker room to leave the facility. Inmates typically approach the front desk, state their name, and explain the purpose of leaving the facility. The officer at the desk would then open a door, which permitted inmates to come up to the front desk and hand over their identification to be scanned. Once the inmate was cleared for release, they would go to the locker rooms, obtain the property needed for the day, and would leave through the exit door. The exit was locked, and inmates would say "door" when they were ready to leave the facility. At that point the door, which was not within the view of the officer at the desk, would be unlocked and the inmate would leave.

[10] Yaddow did not realize that Hunt had left the facility until later that afternoon when he conducted a head count of the inmates. Yaddow informed his supervisor about the situation and later confirmed with Waggoner that she had

not given Hunt authorization to leave the facility on July 12, 2017. Hunt did not return to the work release facility. He was apprehended thirty days later.

[11]     On September 21, 2017, the State charged Hunt with escape, as a Level 5 felony. After a jury trial was held on October 23, 2018, the jury found Hunt guilty as charged. Hunt's sentencing hearing was held on December 3, 2018. Hunt was sentenced to three years in the Indiana Department of Corrections, with no portion of the sentenced suspended to probation. Hunt now appeals.

## Discussion and Decision

[12]     Hunt challenges the sufficiency of the evidence supporting his conviction. More specifically, Hunt challenges the sufficiency of the evidence that he intended to escape lawful detention. He argues that, at best, the evidence establishes that he had the requisite mens rea to fail to return from lawful detention, a less severe offense than escape.

[13]     When we review a challenge alleging that the evidence is insufficient to support the conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The factfinder's role and not the appellate court's role is to assess witness credibility and weigh the evidence to determine whether the evidence is sufficient to warrant a conviction. *Id.* It is the "jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124 126 (Ind. 2005) (quoting *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001)).

[14] Indiana Code section 35-44.1-3-4(a) provides in pertinent part that "[a] person, except as provided in subsection (b), who intentionally flees from lawful detention commits escape, a Level 5 felony." On appeal, Hunt's only challenge is to the sufficiency of the evidence that he acted intentionally.

[15] Indiana Code section 35-41-2-2(a) (1977) provides that a person "engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." "The *mens rea* element of a crime 'may be proven by circumstantial evidence alone, and may be inferred from the facts and circumstances of each case.'" *McMiller v. State*, 90 N.E.3d 672, 675 (Ind. Ct. App. 2017) (quoting *Baxter v. State*, 891 N.E.2d 110, 121 (Ind. Ct. App. 2008)).

[16] The evidence most favorable to the verdict shows that Hunt presented his identification card to Yaddow on July 12, 2017, and was told that he did not have permission to leave the facility on that date. He was allowed to store some of his personal items in a locker, as a courtesy. However, at no time was he told that he could leave. Further, Yaddow told him that after he placed his items in the locker, Yaddow would have to search Hunt before allowing him to return to the living area and meet with Waggoner. Hunt never returned to talk with Waggoner before leaving the facility. Hunt was apprehended thirty days later. Indeed, in his closing statement, Hunt argued that he "left because [he] was tired of being there." Tr. Vol. 2, p. 105.

[17] On appeal, Hunt argues as he did at trial that he had received a pass from Waggoner to leave the facility on July 12, 2017. He further claims that he

would not have been issued boots to wear outside the facility if he had not received a pass to leave that day. He also argues that there had been a misunderstanding between him and Waggoner.

[18] Hunt's arguments on appeal are merely requests to reweigh the evidence, a task we shall not undertake. The evidence is sufficient to support his conviction.

# Conclusion

[19] In light of the foregoing, we affirm Hunt's conviction, finding that there is sufficient evidence to support it.

[20] Affirmed.

Altice, J., and Tavitas, J., concur.