## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 18 2020, 7:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kiree Hayes, *Appellant-Defendant,* | March 18, 2020 |
| v. | Court of Appeals Case No. 19A-CR-758 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Grant Hawkins, Judge |
| | Trial Court Cause No. 49G05-1601-MR-2266 |

**May, Judge.**

[1] Kiree Hayes appeals his convictions of felony murder[1] and Level 3 felony robbery resulting in bodily injury.[2] He raises one issue for our review, which we restate as whether the State presented sufficient evidence to sustain his convictions. We affirm.

# Facts and Procedural History

[2] On January 15, 2016, Kiree Hayes walked into the Cumberland Express Mart at 6:56 p.m. Hayes' face was uncovered, and he was wearing Lawrence North sweatpants and a Michael Kors sweatshirt. Hayes bought a cigar and left the store. Brittany Thompson and a friend were in the store with the store clerk, Khushwinder Singh. Thompson was about to start working as a clerk at the gas station, and when Hayes left the store, she went behind the counter with Singh so that he could teach her about the job.

[3] Shortly after Hayes left the store, two black males wearing hoods and bandanas over their faces entered the store. One masked figure pulled out a silver revolver, and the other pulled out a handgun partially covered with a surgical glove. They announced their intention to rob the gas station. Singh and Thompson were behind the counter when the two males entered. Singh, who was on the phone, put his phone down as he said something in a foreign

[1] Ind. Code § 35-42-1-1 (2014).

[2] Ind. Code § 35-42-5-1 (2014).

language, and one of the masked figures shot him. Singh fell backwards against a cigarette case. The masked figures directed Thompson to open the cash register. When Thompson responded that she did not know how to open the cash register, one of the men said "F[***] this place" and they ran out. (Tr. Vol. II at 120.)

[4] Around this same time, Randall Canter and his fiancé Alicia Demoss were walking to the Express Mart to buy cigarettes. As they approached the Express Mart, they saw a white Dodge Stratus idling in the middle of the street. Canter saw the driver wearing "a red-colored top on [sic] of some sort and I remember there [sic] had some kind of braids or twisties or something in their hair[.]" (*Id.* at 130.) They saw two men in dark clothes run past them and get into the Dodge Stratus, and then the Dodge Stratus quickly drove away. Canter and Demoss tried to go inside the Express Mart, but Thompson told them the gas station was closed. Canter and Demoss walked to another gas station. Officers and paramedics arrived at the Express Mart, and paramedics pronounced Singh dead at the scene. As Canter and Demoss returned to their apartment, they walked past the Express Mart and told police what they had witnessed.

[5] Around 9:20 p.m., two masked individuals walked into a Rich Oil gas station. One of the masked men wore a Michael Kors sweatshirt and Lawrence North sweatpants. The other masked man had on a black jacket. John Vowell, the gas station clerk, was in the back room restocking soda, and he came out of the back room when he heard the door chime. Vowell noticed the person in the black jacket was standing behind the counter, and Vowell informed the person

that he was not supposed to be there. Vowell proceeded to the front of the store, and one of the masked men pointed a gun at him and said "open your drawer, I'll kill you, or somethin' like that." (*Id*. at 184.) The man then hit Vowell in the back of the head with the gun. Vowell opened the cash register and surrendered approximately seventy dollars from the register, and the two men left the store. Vowell locked the store and called the police. Vowell had a bleeding laceration on the back of his head from being hit with the gun and doctors used three staples to close the wound.

[6] Just before those events at the Rich Oil gas station, Sheldon Hunter, his wife Theresa Hunter, and their two children were driving home after Sheldon picked up his paycheck. When they were stopped at a traffic light, Theresa saw two men put masks on and run into the Rich Oil gas station. Sheldon drove into the gas station parking lot to get a better view. He saw three people, one of which appeared to be the store clerk, and he saw the two men hitting the store clerk with their guns. Sheldon drove across the street while Theresa attempted to call 911. Sheldon saw the two men run out of the store and get into the backseat of a Dodge Stratus. The Dodge Stratus pulled out of the gas station, and Sheldon followed the car. Eventually, Theresa was able to speak with a 911 operator. She reported what she saw at the gas station, and the emergency dispatcher told her that they did not need to follow the Dodge Stratus. The Hunters ceased their pursuit, took their children home, and then returned to the gas station to speak with police.

[7] Deputy Loran Wilber and Deputy Drew Butner of the Marion County Sheriff's Department were on patrol when they received a report regarding the Rich Oil gas station robbery. A description of the vehicle and its direction of travel were also relayed over the police radio. The deputies responded at the area and found a white Dodge Stratus in a ditch in a residential area. Because no one was in the car, the deputies set up a perimeter around where the vehicle was. Deputy Wilber and Deputy Butner encountered Hayes and Tyler Miller approximately one block southeast of the Dodge Stratus and detained them. Deputy Wilber observed Hayes wore his hair in a "short dreads" or "twisties" style. (Tr. Vol. III at 56.) Officer Allen Weir of the Indianapolis Metropolitan Police Department also responded to the area. Approximately two blocks east of the Dodge Stratus, Officer Weir encountered and detained Cobb.

[8] Officers examined the vehicle and the area around where the Dodge Stratus was found. Hayes' driver's license was found inside the Dodge Stratus, and Hayes had a set of keys to the car when he was detained. Officers found footprints near a shed that was close to where the Dodge Stratus was abandoned, and underneath the shed, officers found a silver revolver and a dark piece of clothing. Officers found a pair of Lawrence North sweatpants and a semiautomatic pistol inside a tire located about ten to twelve feet away from the shed. Forensic analysis identified the semiautomatic pistol as the gun that fired the bullet that killed Singh. Officers showed the abandoned Dodge Stratus to Demoss, Canter, and the Hunters. Demoss and Canter identified it as the vehicle they saw leaving the Express Mart, and the Hunters identified it as the

vehicle they saw driving away from the Rich Oil gas station. The morning after the crimes, a property owner near where the Stratus was found contacted police because he discovered a Michael Kors sweatshirt on his property.

[9] The State charged Hayes with murder,[3] felony murder, attempt to commit robbery resulting in serious bodily injury,[4] robbery resulting in bodily injury, battery by means of a deadly weapon,[5] and carrying a handgun with a prior felony conviction.[6] The State dismissed the murder and carrying a handgun with a prior felony conviction counts. A jury found Hayes guilty on the remaining counts. The trial court entered judgments of conviction for felony murder and robbery resulting in bodily injury. The court imposed consecutive sentences of fifty years for the murder conviction and fifteen years for the robbery conviction, resulting in an aggregate term of sixty-five years.

# Discussion and Decision

[10] Our standard of review in evaluating the sufficiency of the evidence to support a conviction is well-settled. We do "not reweigh the evidence or judge the credibility of the witnesses, and [we respect] 'the jury's exclusive province to weigh conflicting evidence.'" *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)

---

[3] Ind. Code § 35-42-1-1 (2014).

[4] Ind. Code § 35-42-5-1 (2014).

[5] Ind. Code § 35-42-2-1 (2014).

[6] Ind. Code § 35-47-2-1 (2014).

(quoting *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001)). We "consider only the probative evidence and reasonable inferences supporting the verdict." *Id*. "Regarding circumstantial evidence, such evidence need not overcome every reasonable hypothesis of innocence. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense." *Clemons v. State*, 987 N.E.2d 92, 95 (Ind. Ct. App. 2013) (internal citation omitted).

## 1. Felony Murder

[11]    Hayes contends there is insufficient evidence to sustain his conviction of felony murder because the State merely proved he visited the Express Mart shortly before the robbery, not that he was an accomplice. Hayes notes that he was not inside the store during the robbery. Further, he argues, "No witness testified that they saw Mr. Hayes outside the store during the incident. And no witness identified Mr. Hayes as being the person he or she observed in or near the white Dodge. Additionally, no forensic evidence linked Mr. Hayes to the crime scene." (Appellant Br. at 25.) Thus, he contends the State did not put forth sufficient evidence to prove he was an accomplice.

[12]    Indiana Code section 35-42-1-1 provides: "A person who kills another human being while committing or attempting to commit . . . robbery. . . commits murder, a felony." As we have explained before, "under the theory of accomplice liability, an individual who aids, induces, or causes the commission of a crime is equally as culpable as the person who actually commits the

offense." *Brooks v. State*, 895 N.E.2d 130, 133 (Ind. Ct. App. 2008), *reh'g denied*. An accomplice need not participate in each element of the crime in order to be guilty. *Vandivier v. State*, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005), *trans. denied*. "While mere presence at the scene of the crime is insufficient to establish accomplice liability, presence may be considered along with the defendant's relation to the one engaged in the crime and the defendant's actions before, during, and after the commission of the crime." *Alvies v. State*, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009).

[13] Hayes entered the Express Mart wearing a Michael Kors sweatshirt and Lawrence North sweatpants shortly before the robbery, and a Michael Kors sweatshirt and Lawrence North sweatpants were found near where officers apprehended Hayes. Hayes had short dreadlocks when he was arrested. Canter testified that he observed an individual with short dreadlocks sitting in the driver's seat of a white Dodge Stratus idling in front of the Express Mart, and Canter observed two masked men jump into the car and the car drive away. Further, Canter identified the Dodge Stratus that crashed into a ditch shortly after the Rich Oil robbery as the same Dodge Stratus he saw idling in front of the Express Mart. Hayes' driver's license and his cell phone were found in the Dodge, and Hayes told officers the car belonged to his sister. All this evidence supports the inference that Hayes aided in the Express Mart robbery by scoping

out the store and serving as a getaway driver. [7]  Therefore, the State presented sufficient evidence to support Hayes' conviction of felony murder.  *See Smithers v. State*, 385 N.E.2d 466, 469 (Ind. Ct. App. 1979) (holding State presented sufficient evidence defendant was the driver of the getaway car and guilty of robbery).

## 2. Robbery

[14]  Hayes also argues there was insufficient evidence to support his conviction of robbery resulting in bodily injury because neither Vowell nor the Hunters identified him, no blood was found on his clothing even though Vowell suffered a cut to his head, and "no forensic evidence tied Mr. Hayes to the robbery at the Rich Oil gas station."  (Appellant Br. at 27.)  A person is guilty of Level 3 felony robbery if the person "knowingly or intentionally takes property from another person or from the presence of another person" and the offense results in bodily injury to someone other than the defendant.  Ind. Code § 35-42-5-1.

[15]  Abundant circumstantial evidence links Hayes to the Rich Oil robbery.  Hayes wore a Michael Kors sweatshirt and Lawrence North sweatpants in the Express Mart surveillance footage; one of the Rich Oil robbers wore a Michael Kors

---

[7] Hayes notes Canter testified the driver of the Dodge Stratus wore a red top but the Express Mart surveillance video shows Hayes wearing a gray Michael Kors sweatshirt.  The State posits "the jury could reasonably conclude that [Hayes] removed the hoodie once he was back inside his idling car, which likely was heated."  (Appellee Br. at 17 n.2.)  However, we need not resolve this apparent inconsistency in the evidence, as we consider only whether the evidence most favorable to the judgment supports the jury's determination.  *See Davis v. State*, 791 N.E.2d 266, 269-70 (Ind. Ct. App. 2003) (stating standard of review for sufficiency of evidence analysis), *reh'g denied*, *trans. denied*.

sweatshirt and Lawrence North sweatpants; and both of those items of clothing were found abandoned in the vicinity of the abandoned Dodge Stratus. Further, Hayes himself was found in the vicinity of the abandoned Dodge Stratus, which Hayes reported was his sister's car. The Hunters identified the Dodge Stratus as the getaway vehicle from the Rich Oil robbery. Hayes' personal items were found inside the vehicle, and additional evidence associated with both robberies was found abandoned near the car. Hayes' arguments regarding types of evidence the State did not present amount to requests for us to reweigh the evidence, which we will not do. Therefore, we hold the State presented sufficient evidence to support Hayes' conviction of robbery resulting in bodily injury. *See Abd v. State*, 120 N.E.3d 1126, 1135 (Ind. Ct. App. 2019) (holding sufficient evidence supported defendant's murder conviction and defendant's argument regarding the lack of DNA, fingerprint, or hair evidence linking him to the crime merely amounted to a request to reweigh the evidence), *trans. denied*.

## Conclusion

The State presented sufficient evidence to support Hayes' convictions of felony murder and robbery resulting in bodily injury. Therefore, we affirm.

Affirmed.

Crone, J., and Pyle, J., concur.